UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:07-CV-90-FL

| | |
|---|---|
| LEON JACKSON, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court on the parties' Cross Motions for Judgment on the Pleadings **[DE-15 & 17]**. The time for the parties to file any responses or replies has expired. Accordingly, these motions are now ripe for adjudication. Pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3), the underlying action seeks judicial review of the final decision by the Defendant denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to 28 U.S.C. § 636 (b)(1)(B), this matter is before the undersigned for a memorandum and recommendation. For the reasons set forth herein, the undersigned RECOMMENDS that Plaintiff's Motion for Judgment on the Pleadings **[DE-15]** be DENIED and Defendant's Cross-Motion for Judgment on the Pleadings **[DE-17]** be GRANTED.

## Statement of the Case

Plaintiff applied for DIB and SSI on February 2, 2004, alleging that he became unable to work on July 7, 2004, due to hypertension, cardiomyopathy, diabetes mellitus, poor circulation, and

pain in his knees. [R. at 64-66, 81, 122].[1] His application was denied initially and on reconsideration and he timely filed a request for hearing. Id. at 48-50, 55-59. A hearing was held on February 6, 2006 before an Administrative Law Judge ("ALJ") who found Plaintiff was not disabled during the relevant time period in a decision dated October 26, 2006. Id. at 16-25. On March 29, 2007, the Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review, thus rendering the ALJ's decision the final decision of the Defendant. Id. at 4-6. Plaintiff filed the instant action on June 1, 2007. **[DE-1]**.

## Standard of Review

The Court is authorized to review the Defendant's denial of benefits under 42 U.S.C. § 405 (g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of

---

[1] Plaintiff originally alleged an onset date of June 2, 2001 (R. at 64). He amended his onset date to July 7, 2004 at the administrative hearing (R. at 19, 27).

2

Case 7:07-cv-00090-FL   Document 19   Filed 03/14/08   Page 2 of 17

evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, it is this Court's duty to determine both whether the Commissioner's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## Analysis

The Social Security Administration has promulgated the following regulations, which establish a five-step sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment. [R. at 21]. At step two, the ALJ concluded that Plaintiff suffered from the following severe impairments: degenerative joint disc

3

disease of the knees, diabetes mellitus, and hypertension. Id. In completing step three however, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520 (d) and 416.920 (d)). Id. at 22.

The ALJ then proceeded with step four of his analysis and determined that Plaintiff retained the residual functional capacity ("RFC") to: lift up to 50 pounds occasionally and 25 pounds frequently; sit, stand and/or walk for 6 hours in an 8-hour work day; frequently stoop, kneel, crouch, crawl; occasionally climb stairs, ladders, scaffolds, ropes, and balance; and should avoid hazards. Id. at 22.

A Vocational Expert ("VE") testified at the hearing. Id. at 25, 178-85. The expert stated that Plaintiff's past jobs as a "saw filer" and a "shipping clerk" were medium in physical exertion and skilled occupations. Id. at 25.[2] The expert further explained that based on Plaintiff's RFC, he could return to his past relevant work. Id. Thus, at step four of the sequential analysis, the ALJ concluded that the medical evidence, the expert's testimony, and Plaintiff's RFC, supported a finding that he could return to his past relevant work, and is not disabled. Id. In making these determinations, the ALJ cited substantial evidence, a summary of which now follows.

Plaintiff has alleged that he has an enlarged heart and obesity as impairments. Id. at 21. With regards to his enlarged heart, Plaintiff reported that his physician, Dr. Carter, advised him to

---

[2] In his decision, the ALJ states that the VE testified that Plaintiff's past jobs were "semi-skilled." [R. at 25]. However, the transcript of the hearing indicates that the VE testified that Plaintiff's "saw filer" position has an SVP of 6 and his "shipping clerk" position has an SVP of 5. [R. at 180]. According to Social Security Ruling 00-4p, "skilled work corresponds to an SVP of 5-9 in the DOT." 2000 SSR LEXIS 8, at *8. Thus, the ALJ incorrectly categorized Plaintiff's past jobs in his decision.

4

take daily aspirin tablets for treatment. Id. at 21, 67, 69, 133. However, during a consultative examination on August 12, 2004, by Dr. Douglas Jenkins, the doctor reported that Plaintiff's heart has a regular sinus rhythm without murmurs, friction rubs, gallops, or clicks. Id. at 21, 134. In addition, a chest x-ray, that was conducted during that examination, did not reveal an enlarged heart, but was interpreted as a "radiographically normal chest." Id. at 21, 135. Concerning his obesity, Plaintiff's height is 71 inches and his weight was 275 pounds. Id. at 21-22, 134. However, Dr. Jenkins noted that Plaintiff ambulated without assistance, was able to bend without difficulty, and his straight leg raising was negative bilaterally. Id. at 22, 134. In addition, during the administrative hearing, Plaintiff testified that his weight does not cause any limitations or problems. Id. at 174-75. Thus, after weighing this evidence, the ALJ concluded that he found no evidence in the record that Plaintiff has work-related restrictions due to his heart condition or obesity; therefore, these impairments are considered non-severe. Id. at 22.

With regards to Plaintiff's other impairments, first, the ALJ considered Plaintiff's complaints of knee pain under section 1.02A of the Listing of Impairments. Id. at 22. For motor dysfunction of a joint, the Listing requires involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in an inability to ambulate effectively, as defined in 1.00B2b. Id. at 22; 20 C.F.R. Pt. 404, Subpt. P, App. I. In the report from Dr. Jenkins, he indicated that despite Plaintiff's difficulties with his knee pain and stiffness, the stiffness was relieved by activities and the pain was relieved by resting. Id. at 133-34. The doctor also opined that Plaintiff has a good range of motion of his lower extremities, strength in the lower extremities is 5/5, and he does not need an assistive device for ambulation. Id. at 23, 134. As a result, the ALJ concluded that while

5

Plaintiff's x-rays exhibited degenerative disc changes to his knees, there was no evidence that he is unable to ambulate effectively. Id. at 22, 133, 134, 136.

The second impairment that the ALJ considered was Plaintiff's diabetes mellitus. Id. at 22, 131, 134. The ALJ evaluated Plaintiff's diabetes according to the standards articulated in Listing 9.08. Id. To meet this listing, Plaintiff must have neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station; or Plaintiff must have acidosis occurring at least an average of once every two months documented by appropriate blood chemical tests; or Plaintiff had to exhibit retinitis proliferans, which is evaluated under the visual impairment criteria in 2.00 for visual impairment. Id.; 20 C.F.R. Pt. 404, Subpt. P, App. I. The ALJ concluded that he found no evidence in Plaintiff's medical history of neuropathy, episodes of acidosis occurring on average once every two months, and no evidence of a visual impairment due to diabetes, which meets the criteria set forth in listing 2.00. Id. at 22.

Finally, the ALJ considered evidence of Plaintiff's hypertension. Id. The ALJ noted that to meet Listing 4.02 for hypertensive cardiovascular disease, there must be evidence of enlargement of the heart, ventricular dysfunction, left ventricular ejection fraction of 30% or less with an inability to perform on an exercise tolerance test, and marked physical limitations of physical activity, or cor pulmonale. Id. at 22; 20 C.F.R. Pt. 404, Subpt. P, App. I. According to Plaintiff's treatment records, his chest x-ray on August 12, 2004, did not show enlargement of the heart, and there was no evidence of marked limitations in his physical activity. Id. at 22, 133-35. In addition, although Plaintiff has had fluctuating blood pressure readings, there is evidence that these fluctuations may

have been caused by Plaintiff's noncompliance with medical treatment. Id. at 22. For example, during an examination on June 9, 2003, Dr. Hoskins reported that Plaintiff's hypertension was aggravated by noncompliance, but relieved by taking his medication. Id. at 22, 131. Similarly, on November 7, 2005, Plaintiff's blood pressure was 220/114 initially, but after treatment with blood pressure medication, his blood pressure decreased to 160/80. Id. at 22, 146, 151.

During the hearing in this matter, Plaintiff discussed his educational background, which included an eleventh grade education and passage of the GED examination. Id. at 23, 168. He also testified that he last worked in 2000 in the shipping industry and that the work required lifting 20 pounds or more. Id. at 23, 168-70. Prior to that time, he had worked for 25 years in maintenance. Id. at 23, 170-71. He explained that he left his maintenance job in 1998 because he had pain in both knees. Id. at 23, 171. However, he has not had any surgery, injections, or physical therapy on either knee; he only indicated that he does exercises on a bike for treatment. Id. at 23, 171-72. Plaintiff also complained of an enlarged heart. Id. at 23, 171. He testified that he was told he had an enlarged heart by Drs. Carter and Eskander and he was supposed to take aspirin daily for treatment. Id. at 23, 172. Plaintiff further alleged that he had pain and swelling in his feet due to his diabetes mellitus, and headaches and dizziness caused by his high blood pressure. Id. at 23, 173-74. He also testified that he weighs 264 pounds and is 5'11", but that his weight does not cause any limitations or problems. Id. at 23, 174-75.

During his testimony, Plaintiff also described his activities of daily living. Id. at 23. He explained that he has a driver's license, but has not driven since 2005, he regularly attends church on Sundays for up to two hours, goes out to eat with his wife, and his friends and family visit him.

Id. at 23, 176-77. He also reported that he does not perform any household duties, yard work, or maintenance on the house, and does not participate in sports. Id. at 23, 176-77. Instead, he lies down for 3-4 hours every day. Id. at 23, 177-78.

The ALJ made the following observations with regard to the credibility of Plaintiff's testimony:

> The undersigned has carefully considered the claimant's testimony about his symptoms and complaints together with the evidence as a whole and finds that his allegations are inconsistent with the medical evidence of record.
> A consultative physical examination by Dr. Douglas Jenkins showed that his blood pressure was 180/100, and his heart had a regular rate and rhythm without murmurs, rubs, gallops or clicks. He had good peripheral pulses in both lower extremities. He was able to ambulate without assistance, got on and off the examining table with minimal difficulty, able to dress and undress without assistance, and had no spasm or tenderness. He was able to bend without difficulty, although he had some difficulty squatting because of knee stiffness and pain. Straight leg raising was negative bilaterally. There was slight tenderness to palpitation about both knees with no significant synovial hypertrophy or deformity. The remaining joints of the upper and lower extremities showed no deformity, tenderness, or limitation of motion. Strength was 5/5 in all extremities. Reflexes were +1 and equal. A chest x-ray was normal. Dr. Jenkins diagnosed adult onset diabetes mellitus, hypertensive vascular disease, degenerative joint disease, and questionable sleep apnea.
> There is an issue of noncompliance with medical treatment which affects the claimant's credibility concerning his limitations. Dr. P.G. Hoskins examined the claimant on June 9, 2003, noting that the claimant was in no distress, and reported that the claimant's diabetes mellitus and hypertension were uncontrolled due to noncompliance with medical treatment. He stated that the claimant's diabetes and hypertension were aggravated by medication noncompliance and relieved by taking medication. Dr. Ronald Cottle noted on October 13, 2004, that the claimant's blood pressure was 130/90, and that the claimant was noncompliant with medication. On November 7, 2005, the claimant's blood pressure was 220/114 initially, but after being given blood pressure medication, his blood pressure decreased to 160/80.
> Dr. Stephen Candela saw the claimant on October 12, 2004, for complaints of bilateral knee pain. The claimant indicated that he could not complete a full day of work due to knee joint pain. Dr. Candela reported that x-rays showed joint space narrowing, indicative of degenerative changes; however, Dr. Candela noted that the claimant had good range of motion of the knees.

8

> The claimant's daily activities are inconsistent with allegations of total disability. He testified that he attends church regularly on Sundays for up to two hours, goes out to eat with his wife, and his friends and family visit him.

Id. at 24.

In addition to Plaintiff's testimony, the ALJ also considered an evaluation by a DDS medical consultant. Id. at 24. The consultant concluded that the Plaintiff could lift up to 50 pounds occasionally and 25 pounds frequently and could sit, stand, and/or walk for about 6 hours each day in a normal 8-hour work day with occasional climbing of stairs, ladders, ropes, scaffolds, and balancing, with frequent stooping, kneeling, crouching, and crawling. Id. at 24, 139-40. The ALJ concluded that "[s]ubstantial weight is given to the state agency opinion as it is consistent with the medical evidence." Id. at 24.

After weighing this evidence, the ALJ determined that Plaintiff retained the RFC to perform medium work. Id. at 22. Specifically, the ALJ found that:

> [Plaintiff] can lift up to 50 pounds occasionally and 25 pounds frequently and he can sit, stand and/or walk for 6 hours each in an 8-hour work day. He can frequently stoop, kneel, crouch, crawl and occasionally climb stairs, ladders, scaffolds, and ropes, and balance. He should avoid hazards.

Id. at 22.

A Vocational Expert ("VE") testified at the administrative hearing. Id. at 25, 178-85. The expert stated that Plaintiff's past relevant work included a job as a "maintenance repairer," which requires heavy exertion and is a skilled occupation with a specific vocational preparation ("SVP") of 8. Id. at 180. However, since Plaintiff indicated that he only changed the motors and gear boxes when they were broken, instead of repairing them, the expert testified that this lowered the SVP of

9

the job to a 5, but was still a skilled occupation. Id. at 179-80. In addition, the expert further explained that while Plaintiff was performing his "maintenance repairer" job, he was also a "saw filer," which is a job within itself. Id. at 180. The expert noted that the saw filer job required medium exertion and is also a skilled position with an SVP of 6. Id. Furthermore, the vocational expert concluded that Plaintiff worked as a "shipping clerk," which the expert classified as a medium skilled job, with an SVP of 5. Id. Finally, after the ALJ posed a hypothetical based on Plaintiff's RFC, the expert opined that Plaintiff could return to his past relevant medium work as a "saw filer" and a "shipping clerk" Id. at 25, 183. Accordingly, the ALJ determined that Plaintiff had not been under a disability through the date of his decision. Id. at 25.

Based on the foregoing record, the Court hereby finds that there was substantial evidence to support the ALJ's conclusions. The undersigned shall now address Plaintiff's assignment of error.

## Assignments of Error

Plaintiff does not contest the ALJ's findings regarding his impairments or RFC. Instead, in his only assignment of error, he asserts that the evidence in the record does not support the ALJ's conclusion that he can perform the skilled positions of a "saw filer" and a shipping "clerk." **[DE-16, p. 10]**. Specifically, Plaintiff alleges that the ALJ used the VE's testimony to "reclassify" his past jobs, which he considered "heavy unskilled work," to medium skilled work. Id. at 13. For the reasons stated below, Plaintiff's argument is without merit.[3]

---

[3] Plaintiff's assertion that he is unable to perform "skilled work" is perplexing in light of the evidence. For example, Plaintiff contends that his past work as a maintenance repairer is classified as "heavy unskilled work," but according to the Dictionary of Occupational Titles, code 638.261-030, for machine repairer/maintenance, it has an

10

Generally, the skill level of a claimant's past relevant work will "be apparent simply by comparing job duties with the regulatory definitions of skill levels." 1982 SSR LEXIS 34, at *11. However, when the skill level is not apparent, the ALJ should consult the Dictionary of Occupational Titles or a vocational expert for clarification. Id. at 11-12. For a "vocational expert's opinion to be relevant and helpful, it must be based upon a consideration of all other evidence in the record . . . ." Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). In addition, a vocational expert may rely on his or her own knowledge and expertise about the physical and mental demands of a claimant's past relevant work, "either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560 (b)(2). Furthermore, there is a presumption that the general job categories of the Dictionary of Occupational Titles ("DOT") are applicable to a claimant's past relevant work. De Loatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983). However, a claimant may overcome this presumption by "demonstrating that [his or] her duties were not those envisaged by the framers of the Secretary's category." Id.

In this case, the vocational expert utilized Plaintiff's testimony, the evidence in the record, and his own knowledge and expertise to conclude that Plaintiff could perform the medium skilled

---

SVP of 7. See [DE-16, pgs. 10, 13]. Social Security Ruling 00-4p states that "skilled work corresponds to an SVP of 5-9 in the DOT." 2000 SSR LEXIS 8, at *8. In addition, even when the VE adjusted the SVP for this job to accurately reflect Plaintiff's limited duties, it was only lowered to 5, which means it still qualifies as a skilled position. [R. at 180]. Furthermore, Plaintiff recognized that the "maintenance repairer" job was "heavy" but "skilled" work in his brief. [DE-16, P. 12]. Plaintiff has not offered any evidence to contradict the DOT's description of his past work and did not challenge the VE's characterization of his past work during the hearing. It should also be noted that skilled occupations are divided into two categories. 1982 SSR LEXIS 34, at *10. The lower level of skilled work includes jobs such as bulldozer operator, firebrick layer, and hosiery machine operator. Id. "Where the skills in (and transferability of skills from) jobs like these are at issue, occupational reference sources or a VS should be consulted as necessary." Id. On the other hand, at the upper level of skilled work, there are jobs like architect, aircraft stress analyst, air-conditioning mechanic, and various professional, executive, or managerial occupations. Id.

11

job of a "saw filer." For example, Plaintiff testified that while he was working for Georgia Pacific Corp., he performed maintenance, which included lifting motors, knives, and saws, and other duties related to maintenance. [R. at 171]. In addition, in a work history report and a disability report that Plaintiff submitted, he indicated that his job title at Georgia Pacific was "saw filer," and his duties involved sharpening or grinding knives, maintenance work, lifting up to 50 to 100 pounds, and some of the skills required for the job included using machines, tools, or equipment, technical knowledge or skills, and writing and completing reports. Id. at 90-91, 123.

Plaintiff now asserts that because the VE did not ask him to further clarify the job skills he used to perform the saw filer job or the shipping clerk job, as he did for the maintenance repairer job, the VE's conclusion about his ability to perform his past work was in error. **[DE-16, pgs. 12-13]**; [R. at 179] . While the VE may have asked for clarification about one of Plaintiff's past jobs during the hearing, there is no requirement that requires him to do so. Instead, the VE may rely on the evidence in the record, and his own background and expertise to make a determination about Plaintiff's ability to perform his past relevant work.

Notably, based on Plaintiff's own description of his past work, it is clear that his duties were not exclusively limited to maintenance. Instead, while performing the maintenance work, he was also a "knife grinder," and used various machines, tools, or equipment, as well as technical knowledge and skills to fulfill his duties. Thus, using this evidence, and his own knowledge and expertise, the VE properly concluded that while Plaintiff was no longer capable of performing heavy maintenance work, the other skills that he acquired during his time at Georgia Pacific, and his RFC, enable him to perform the medium skilled job of a "saw filer." As a result, the VE's

12

testimony provided substantial evidence to support the ALJ's determination that Plaintiff could return to his past relevant work. Therefore, Plaintiff's argument is without merit.

In addition to challenging his ability to perform the "saw filer" position, Plaintiff also alleges that it was error to reclassify his work "as a laborer in a book shipping operation" to a shipping "clerk." **[DE-16, p. 12]**. The record reflects that Plaintiff worked in the "shipping and printing department" at First Born Publishing and his duties involved "shipping, loading, putting books in boxes, and sealing them up and shipping them, doing shipping." [R. at 73, 170]. Additionally, Plaintiff also indicated that the boxes that he loaded weighed 20 pounds or more and that he regularly had to lift them. Id. at 170. However, Plaintiff now contends that the VE's classification of his past work as a shipping "clerk" was "unwarranted and unsupported by any evidence." **[DE-16, p. 13]**.

According to the Dictionary of Occupational Titles ("DOT"), the responsibilities of a shipping and receiving clerk can include the following:

> Verifies and keeps records on incoming and outgoing shipments and prepares for shipment: Compares identifying information and counts, weighs, or measures items of incoming and outgoing shipments to verify information against bills of lading, invoices, orders or other records. Determines method of shipment, utilizing knowledge of shipping procedures, routes, and rates. Affixes shipping labels on packed cartons or stencils identifying shipping information on cartons, using stenciling equipment. Assembles wooden or cardboard containers or selects preassembled containers. Inserts items into containers, using spacers, fillers, and protective padding. Nails covers on wooden crates and binds containers with metal tape, using strapping machine. Stamps, stencils, or glues identifying information and shipping instructions onto crates or containers. Posts weights and shipping charges, and affixes postage. Unpacks and examines incoming shipments, rejects damaged items, records shortages, and corresponds with shipper to rectify damages and shortages. Routes items to departments. Examines outgoing shipments to ensure shipments meet specifications. Maintains inventory of shipping materials and

supplies. May operate tier-lift truck or use handtruck to move, convey, or hoist shipments from shipping-and-receiving platform to storage or work area. May direct others in preparing outgoing and receiving incoming shipments. May perform only shipping or receiving activities and be known as Shipping Clerk (clerical) or Receiving Clerk (clerical). May be designated according to specialty as Freight Clerk (clerical); Reshipping Clerk (clerical). May receive damaged or defective goods returned to establishment and be designated Returned-Goods Receiving Clerk (clerical). May receive unsold products returned by DRIVER, SALES ROUTE (retail trade; wholesale tr.) 292.353-010 and be designated Route Returner (clerical).

U.S. Dept. of Labor, Dictionary of Occupational Titles, § 222.387-050 (4th ed. 2001).

In addition, the DOT classified this position as "medium work" because it involves lifting or exerting 20 to 50 pounds occasionally; 10 to 25 pounds frequently; and/or up to 10 pounds constantly. Id.

Based on the DOT description and Plaintiff's testimony, there was evidence to support the VE's conclusion that Plaintiff is capable of performing the "shipping clerk" job. To illustrate, although the DOT broadly defines several duties associated with this position, it also states that an individual "[m]ay perform *only* shipping or receiving activities and be known as Shipping Clerk (clerical) or Receiving Clerk (clerical)." Id. at § 222.387-050 (emphasis added). Thus, Plaintiff's testimony that he shipped, loaded, and sealed books in boxes, certainly falls within this definition.

In addition, SSR 82-61 states that the ALJ can rely on the DOT to "define [a] job as it is *usually* performed in the national economy." 1982 SSR LEXIS 31, *at 3 (emphasis in original). As a result, during the hearing, the ALJ relied on the VE's testimony to explain that the skills required to perform the shipping clerk job include "[h]aving knowledge of what you have to do to ship out some product which has to do with various forms of paperwork, wrapping it properly and then getting it directed towards the, within the department to be picked up." [R. at 181]. While the

14

VE's description is more narrow than the DOT definition of the position, it does not contradict that definition. Id. at 25. Therefore, the ALJ properly concluded that Plaintiff was not disabled because he retained the RFC to perform "the functional demands and job duties of the [shipping clerk job] as generally required by employers throughout the national economy." 1982 SSR LEXIS 31, *at 4; [R. at 25].

Furthermore, while Plaintiff asserts that his testimony "did not indicate the upper limit of [his] lifting requirements on [his shipping] job . . .," this does not preclude the VE from using his own knowledge and expertise to determine the exertional demands of the position. **[DE-16, p. 10];** See 20 C.F.R. § 404.1560 (b)(2) (stating "[a] vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"). In fact, Plaintiff does not even dispute that his shipping position required him to lift 20 to 50 pounds, nor could he. During the hearing, he specifically stated that the shipping job required him to lift "20 pounds and up." [R. at 170]. Thus, Plaintiff's testimony does not contradict the VE's conclusion that, as performed in the national economy, the shipping clerk position is categorized as medium work, and based on Plaintiff's testimony and RFC, he is capable of performing the exertional demands of this position. Therefore, Plaintiff's argument is meritless.

As additional support for his argument regarding the skilled positions, Plaintiff cites Fourth Circuit precedent, Pyles v. Bowen, 849 F.2d 846 (4th Cir. 1988). The Pyles Court concluded that the Secretary must show that specific skills that a claimant acquired during his past relevant work

15

are transferable to other jobs in the national economy. Id. at 849. However, Pyles is inapposite. Specifically, Pyles involved the transferability of skills to other work at step five in the sequential evaluation process. Id. at 848. At step five, the Secretary has the burden to prove that there are other jobs in the national economy that a particular claimant can perform. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). However, this case is being evaluated under step four in the sequential process. At step four, the claimant has the burden to prove that his or her "impairment[s] prevent [them] from performing [their] past work." Bowen, 482 U.S. at 146, n.5. Plaintiff has failed to meet this burden. Nonetheless, in a footnote in his brief, Plaintiff argues that the distinction between the fourth and fifth steps in the sequential process is not significant because both "involve the issue of substantial evidence to support a VE's opinion and the propriety of using VE speculation to establish a necessary fact." **[DE-16, p. 13, n.6]**. However, as discussed above, the VE's opinion was not based on "speculation." The VE used the record, Plaintiff's testimony, the DOT, and his own knowledge and expertise to conclude that Plaintiff could perform the skilled positions of a saw filer and shipping clerk. Therefore, Plaintiff's citation of Pyles is unavailing.

**Conclusion**

For the reasons discussed above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-15]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-17]** be GRANTED, and the final decision by Defendant be AFFIRMED.

DONE AND ORDERED in Chambers at Raleigh, North Carolina this 14th day of March, 2008.

_____
William A. Webb
U.S. Magistrate Judge